IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:18-cv-00314-MR

JONATHAN ANTHONY LEE TORRES, )
)
        Plaintiff, )
)
vs. ) **MEMORANDUM OF DECISION AND ORDER**
)
FNU DAVIS, et al., )
)
        Defendants. )
_____

**THIS MATTER** comes before the Court on the parties' Motions for Summary Judgment [Docs. 39, 47]. Also pending are Plaintiff's "Motion to Amend and Consolidation LCvR 42.1" [Doc. 31] and Motion to Appoint Counsel [Doc. 34].

**I.    BACKGROUND**

The incarcerated Plaintiff, proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983. The Amended Complaint [Doc. 16] addresses incidents that allegedly occurred at the Buncombe County Detention Facility ("BCDF"). The Defendants are: Michael Davis, a BCDF shift sergeant; Aaron Uldricks, a BCDF detention officer; Kim Caraway, a BCDF administrative support associate; and Desiree Ruff, a BCDF administrative support specialist. The Amended Complaint passed initial review on two alleged First Amendment

violations regarding interference with Plaintiff's mail. First, Plaintiff alleges that Defendant Davis improperly threw away an outgoing piece of mail on August 30, 2018 as contraband. Second, Plaintiff alleges that Defendants Uldricks, Caraway, and/or Ruff improperly returned to sender an incoming piece of legal mail from Plaintiff's lawyer during the first two weeks of September 2018. Plaintiff seeks damages.

Defendants filed a Motion for Summary Judgment [Doc. 39], arguing that they are entitled to qualified immunity because no constitutional violation occurred and they did not violate any of Plaintiff's clearly established rights.

Plaintiff was informed of the legal standard that applies to summary judgment motions and of the importance of filing a persuasive response to Defendants' Motion. [Doc. 43]. However, rather than responding to Defendants' Motion for Summary Judgment, Plaintiff filed his own Motion for Summary Judgment [Doc. 47] to which he has attached a Declaration and exhibits. Plaintiff argues that summary judgment should be granted in his favor and that the Defendants' qualified immunity defense should be rejected. Defendants filed a Response. [Doc. 49].

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). To withstand a motion for summary judgment, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence. Dash v. Mayweather, 731 F.3d 303, 311, (4th Cir. 2013).

## III. DISCUSSION

The First Amendment, as incorporated through the Fourteenth Amendment, prohibits states from "abridging the freedom of speech." U.S. Const. Amend. I. This proscription "extends to both government regulations that directly burden speech and those that have indirect chilling effects." Haze v. Harrison, 961 F.3d 654, 658 (4th Cir. 2020). As a general matter, prisoners have the right to both send and receive mail. See Thornburgh v. Abbott, 490 U.S. 401, 408 (1989); Pell v. Procunier, 417 U.S. 817 (1974). Restrictions on this right are valid if they are reasonably related to legitimate penological interests.[1] Turner v. Safley, 482 U.S. 78, 89 (1987); see, e.g.,

---

[1] It appears that Plaintiff was a pretrial detainee at the time of the incidents at issue. The same standard applies to pretrial detainees and prisoners in the context of alleged First Amendment violations. See Haze, 961 F.3d at 658.

3

Wolff v. McDonnell, 418 U.S. 539, 576 (1974) (a prisoner's First Amendment interest in corresponding does not preclude prison officials from examining mail to ensure that it does not contain contraband; prison officials may open mail from an attorney that is addressed to a petitioner only in the prisoner's presence).

Section 1983 "will not support a recovery for mere negligence." Morrash v. Strobel, 842 F.2d 64, 67 (4th Cir. 1987) (citing Daniels v. Williams, 474 U.S. 327 (1986)). Further, isolated incidents of mail mishandling do not rise to the level of a constitutional violation. See Buie v. Jones, 717 F.2d 925, 926 (4th Cir. 1983) ("few isolated instances of plaintiff's [legal] mail being opened out of his presence" that were "either accidental or the result of unauthorized subordinate conduct … were not of constitutional mandate."); Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) ("an isolated incident of mail tampering is usually insufficient to establish a constitutional violation."); Pearson v. Simms, 345 F.Supp.2d 515, 519 (D. Md. 2003), aff'd, 88 F. App'x 639 (4th Cir. 2004) ("occasional incidents of delay or non-delivery of mail are not actionable under § 1983").

Qualified immunity "shields police officers who commit constitutional violations from liability when, based on clearly established law, they could reasonably believe that their actions were lawful." Estate of Jones by Jones

4

v. City of Martinsburg, W. Virginia, 961 F.3d 661, 667 (4th Cir. 2020), *as amended* (June 10, 2020) (internal citation omitted). To determine whether qualified immunity applies, the courts conduct a two-step inquiry, in either order: "(1) whether a constitutional violation occurred; and (2) whether the right was clearly established at the time of the violation…." Booker v. S. Carolina Dep't of Corr., 855 F.3d 533, 538 (4th Cir. 2017). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Plaintiff claims that his mail was mishandled on two occasions. The first was on August 30, 2018, when Defendant Davis threw away one piece of outgoing mail. Defendant Davis states in his Affidavit that he was reviewing outgoing mail for the shift when he "found that Plaintiff had submitted a letter for mailing with a return address of a different detention facility and the name of a different inmate" [Doc. 39-2: Davis Aff. at 3], which is a violation of Policy 400-11 and the Inmate Handbook. [Doc. 39-2 at 4; Doc. 39-2: BCSO Policy and Procedure Manual at 6; Doc. 39-2: BCDF Inmate Handbook at 8]. In Defendant Davis' experience as a detention officer, "an inmate will put the incorrect return address on a letter in an

5

attempt to get a letter delivered to another inmate in another facility without paying postage or to avoid having the other facility inspect the contents of the letter." [Doc. 39-2: Davis Aff. at 3]. As neither Policy 400-11 nor the Inmate Handbook gives guidance as to what to do in this situation, Defendant Davis discussed the matter with another shift supervisor. They both agreed that "the letter constituted contraband and was an attempt by the inmate to defraud the postal system." [Id. at 4]. Defendant Davis therefore threw away the letter rather than returning it to Plaintiff and informed Plaintiff that he did so because the letter was in violation of policy. [Id.]. Plaintiff lost his free time on August 30, 2018 for this violation. [See Doc. 47-9: Incident Report]. Defendant Davis states that Plaintiff's letter was the only letter that Davis has ever thrown away and "[t]he only reason [he] threw away Plaintiff's letter was that [he] believed the letter to be contraband." [Doc. 39-2: Davis Aff. at 5].

Plaintiff filed a grievance addressing the matter. [Doc. 47-10 at 1]. Lieutenant Jeffrey Littrell found that Plaintiff should have placed the correct return address on the envelope but that Davis should not have thrown away the letter. [Doc. 39-6: Littrell Affidavit; Doc. 39-6 at 10: Grievance Response]. Plaintiff was given new paper and a new envelope to re-send his letter [Doc. 39-6 at 10: Grievance Response], and Captain Gould apologized for the incident [Doc. 47-12 at 1]. Defendant Davis was instructed to place

6

contraband letters in the inmate's personal belongings rather than throwing them away. [Doc. 39-2: Davis Aff. at 4].

The second incident occurred in early September 2018, when a piece of incoming legal mail from Plaintiff's defense lawyer was returned to sender. Defendants Caraway, Ruff, and Uldricks, who are responsible for intaking and processing incoming inmate mail, filed affidavits regarding the period in question. They state that Defendants Caraway and Ruff are responsible for receiving the mail and determining whether the inmate is currently residing in the Facility. [Doc. 39-3: Uldricks Aff. at 1-2; Doc. 39-4: Caraway Aff. at 1-2; Doc. 39-5: Ruff Aff. at 1-2]. If the inmate is not residing in the Facility, the mail is returned to the sender. [Id.]. If the inmate is residing at the Facility, Defendants Caraway and Ruff forward the mail to Defendant Uldricks, who sorts the mail and screens it for compliance with Policy 400-11. [Id.].

Defendants Caraway, Ruff, and Uldricks have no personal knowledge of receiving any legal mail for Plaintiff or returning to sender any legal mail for Plaintiff between August 1, 2018 and September 30, 2018. [Doc. 39-3: Uldricks Aff. at 3; Doc. 39-4: Caraway Aff. at 2; Doc. 39-5: Ruff Aff. at 2]. If Defendant Uldricks had received legal mail for Plaintiff, he would have forwarded the legal mail to Plaintiff's housing unit. [Doc. 39-3: Uldricks Aff. at 3]. Neither Uldricks, Caraway, nor Ruff has ever intentionally returned a

7

piece of legal mail to the sender while knowing that the inmate is a resident of the Facility. [Id.; Doc. 39-4: Caraway Aff. at 2; Doc. 39-5: Ruff Aff. at 2].

Lieutenant Littrell states that, other than the two mail incidents addressed in the Amended Complaint, he could not find any other grievance regarding Plaintiff's mail. [Doc. 39-6: Littrell Aff.].

Plaintiff has filed sworn statements in which he aserts that there is no "actual proof" that the return address on the outgoing letter was wrong; that the facts show that Plaintiff's mail was inspected before it reached Defendant Davis; and that "[t]here is no reason why [Plaintiff would] need to put wrong return address on mail" because the policy does not prohibit BCDF inmates from writing to an inmate at another facility. [Doc. 47-2 at 2; see 47-3 at 4-5]. Plaintiff further contends that Defendant Davis should have known that the allegedly incorrect outgoing letter should have been returned to Plaintiff rather than being thrown away because all BCDF employees receive the same training. Plaintiff appears to suggest that this incident may be connected to a conversation that he had with Defendant Davis on August 29, 2018, when he asked Davis about "how SBI works" in the context of a "situation with Sgt. Nathan Ball and body-cam video."[2] [Doc. 47-3 at 2].

---

[2] Plaintiff fails to explain why this conversation would have prompted Defendant Davis to retaliate against Plaintiff. Nor does Plaintiff explicitly allege that any retaliation occurred.

8

With regards to the legal mail, Plaintiff argues that because all BCDF employees receive the same training, Defendants Caraway, Ruff and Uldricks should have knowledge about the legal mail mistake. Plaintiff notes that there are gaps in the mail logs and that either Defendant Caraway, Ruff, or Uldricks must have rejected his legal mail. [Doc. 47-3 at 2].

Plaintiff's conclusory allegations fail to refute Defendants' assertions that the outgoing letter's return address violated policy and that Defendant Davis' destruction of the letter was based on his mistaken but good-faith interpretation of BCDF policy. Plaintiff also fails to refute Defendants Caraway, Ruff, and Uldricks' assertions that they did not purposely mishandle Plaintiff's incoming legal mail. The existence of these two unrelated instances of negligent mail mishandling by distinct Defendants does not rise to the level of a constitutional violation. See, e.g., Buie, 717 F.2d at 926; Davis, 320 F.3d at 351; Pearson, 345 F.Supp.2d at 519. Nor has Plaintiff demonstrated that Defendants violated any clearly established right. As such, Defendants are entitled to qualified immunity. See Booker, 855 F.3d at 538. Accordingly, Defendants' Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment will be denied.

Because this case is dismissed, Plaintiff's "Motion to Amend and [for] Consolidation LCvR 42.1" [Doc. 31], in which he seeks to correct Defendants'

9

names and the capacities in which they are being sued, and Plaintiff's Motion to Appoint Counsel [Doc. 34], will be denied as moot.[3]

## IV. CONCLUSION

For the reasons stated herein, the Court will grant Defendants' Motion for Summary Judgment, deny Plaintiff's Motion for Summary Judgment, and deny as moot Plaintiff's pending motions.

## O R D E R

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment [Doc. 39] is **GRANTED**.
2. Plaintiff's Motion for Summary Judgment [Doc. 47] is **DENIED**.
3. Plaintiff's "Motion to Amend and Consolidation LCvR 42.1" [Doc. 31] and Motion to Appoint Counsel [Doc. 34] are **DENIED** as moot.
4. This action is hereby **DISMISSED WITH PREJUDICE.**
5. The Clerk is directed to close this case.

**IT IS SO ORDERED.** Signed: July 21, 2020

Martin Reidinger
Chief United States District Judge

---

[3] Even if the Motion to Appoint Counsel were not moot, it would be denied because Plaintiff has failed to establish the existence of extraordinary circumstances. See <u>Miller v. Simmons</u>, 814 F.2d 962, 966 (4th Cir. 1987) (a plaintiff must present "exceptional circumstances" in order to require the Court to seek the assistance of a private attorney for a plaintiff who is unable to afford counsel).